**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUILLERMO SANCHEZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HÖEGH LNG PARTNERS LP, SVEINUNG J. S. STØHLE, HÅVARD FURU, AND STEFFEN FØREID, <br><br> Defendants. | No.: 2:21-cv-19374-KM-JBC <br><br> **MEMORANDUM OF LAW OF PRINCIPIA LIMITED IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** <br><br> <u>CLASS ACTION</u> <br><br> **Motion Date: February 7, 2022** |

*[Additional caption on next page]*

|  |  |
|---|---|
| ARTHUR F. ROIZMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>     vs.<br><br>HÖEGH LNG PARTNERS LP, SVEINUNG J. S. STØHLE, HÅVARD FURU, and STEFFEN FØREID,<br><br>     Defendants. | No.: 2:21-cv-19613-KM-JBC<br><br>CLASS ACTION |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  ARGUMENT...............................................................................................2

　A.  COMPETING MOVANTS ARE ATYPICAL AND INADEQUATE ...........3

　1.   The Group is an Improper Lawyer-Made Group Created by Counsel .......3

　2.   Mr. Gonzalez is Atypical as a High Frequency Trader .............................9

　B.   PRINCIPIA SHOULD BE APPOINTED LEAD PLAINTIFF..................10

　C.   PRINCIPIA'S CHOICE OF COUNSEL SHOULD BE APPROVED ......12

　D.   COMPETING MOTIONS SHOULD BE DENIED ...................................13

III. CONCLUSION .........................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)....................8

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ......................................................8

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ....................................2, 3

*In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39 (D. Mass. 2001)...............4

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,

   2009 WL 10684924 (D. Colo. May 4, 2009) ......................................................4

*In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147 (D. Del. 2005) ........12

*In re Ply Gem Holdings, Inc., Sec. Litig.*,

   2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014)....................................................5

*In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401 (S.D. Tex. 2000).............4

*Jakobsen v. Aphria, Inc.*, 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019).............5, 7

*Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007)...............................................8

*Kaplan v. S.A.C. Capital Advisors, L.P*, 311 F.R.D. 373 (S.D.N.Y. 2015) ............12

*Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627 (D.N.J. 2002) ...................3

*Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817 (D.N.J. Feb. 14, 2018) ..............4, 5

*Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. Nov. 6, 2018) ............4

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,

   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..............................................................8, 12

*Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...12

## Statutes

15 U.S.C. § 78u-4....................................................................................... passim

## Rules

Fed. R. Civ. P. 23 ...................................................................................... passim

Lead Plaintiff Movant Principia Limited ("Principia") respectfully submits this memorandum in opposition to the competing lead plaintiff motions filed by: (i) Yen-Hsun Huang ("Huang") and Scott Miller ("Miller" and together with Huang, the "Group") (Dkt. No. 19); (ii) Oscar Gonzalez ("Mr. Gonzalez") (Dkt. No. 17); (iii) Mark Casebolt ("Mr. Casebolt") (Dkt. No. 18); (iv) Ray F. Anderson ("Mr. Anderson") (Dkt. No. 15); and (v) Earl Kelly, Amos Farrell, and Kelly Shamash (the "Höegh Investor Group") (Dkt. No. 14).

## I.       INTRODUCTION

Before the Court are six lead plaintiff motions. While two movants—the Group and Mr. Gonzalez—claim to have suffered larger losses than Principia, neither of these competing movants qualify as the presumptive lead plaintiff as they cannot meet Rule 23's typicality and adequacy requirements. These movants are atypical and inadequate as they are subject to unique defenses, have engaged in extreme high frequency trading (also called day trading), or are an improper, unrelated grouping of investors brought together by counsel.

In contrast to the inadequate and atypical movants noted above, Principia has the greatest losses and satisfies the adequacy and typicality requirements of Rule 23. As such, the PSLRA provides that Principia is presumed to be the "most adequate plaintiff" and, therefore, should be appointed lead plaintiff on behalf of the putative class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

1

## II.    ARGUMENT

Under the PSLRA's analysis, Principia should be appointed the Lead Plaintiff as "[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *Id.* "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, and is thus the presumptively most adequate plaintiff." *Id.*

Importantly, in "inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Id.* at 265. In addition, the presumptive lead plaintiff cannot be "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at 222.

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff" and "then identify

2

the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id.* at 267.

Here, the Group and Mr. Gonzalez have each failed to make the requisite showing of adequacy and typicality required the trigger the Lead Plaintiff presumption.

### A. COMPETING MOVANTS ARE ATYPICAL AND INADEQUATE

#### 1. The Group is an Improper Lawyer-Made Group Created by Counsel

The Group is an unrelated group of investors brought together by counsel to create the largest financial interest. The Group's submissions fail to demonstrate otherwise. Indeed, the Group has not provided any client driven reason why an investors in Tacoma, Washington decided to team up with an investor in Taiwan and the Taiwanese investor's mother and entity. Simply, there is no client driven reason. These investors were brought together by two law firms to create the largest financial interest.  Courts refuse to appoint such groups as Lead Plaintiff.

While courts are divided on the issue of whether unrelated investors are permitted to aggregate their losses, the recent trend is to reject unrelated groups. *See*, *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 637 (D.N.J. 2002) ("[I]f a movant 'group' was created by the efforts of lawyers for the purpose of ensuring

3

that it is named lead counsel, the 'group' should not be named lead plaintiff."); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 WL 10684924, at *4 (D. Colo. May 4, 2009) (finding proposed lead plaintiff group "ha[d] not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation and their shared counsel"); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) ("The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group.'").

Indeed, in a very similar situation as here, this Chief Judge Wolfson in *Takata v. Riot Blockchain, Inc.* appointed an individual movant with smaller losses over two groups of unrelated investors with larger losses and refused to aggregate losses of the lead plaintiff groups as they each failed to satisfy the adequacy requirement. 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018). Principia urges the Court to apply the same analysis here.

While the Group members submitted a joint declaration in an effort to support the Group, their boilerplate declaration is insufficient. *Takata*, 2018 WL 5801379, at *5 (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the *Cendant* court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff."); *Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff motion of a group of geographically dispersed plaintiffs that did not state how they were joined

4

together and declaration contained conclusory statements); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently.); *In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation." (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation").

Importantly, the Group provides no client- or class-driven reason for this grouping, nor do they provide any information regarding how these apparent strangers from different countries found each other. *See Stires*, 2018 WL 5784817, at *5 (denying lead plaintiff status to an investor group despite their larger losses due, in part, because the members did not provide "any information regarding how these five apparent strangers from different states found each other").

Additionally, no explanation whatsoever is provided as to why the Group has retained "Additional Counsel" (Dkt. No. 19-8) and what role if any "Additional Counsel" will have in this case.  This silence says it all.  "Additional Counsel" and the Group's counsel decided to team up their clients to create the largest financial

interest.  Nonetheless, the failure to provide information about what role "Additional Counsel" weights against the Group's motion. *Cendant Corp.*, 264 F.3d at 265–66 ("a court might conclude that the movant with the largest losses could not surmount the threshold adequacy inquiry if it lacked legal experience or sophistication, intended to select as lead counsel a firm that was plainly incapable of undertaking the representation, or had negotiated a clearly unreasonable fee agreement with its chosen counsel[.]") (citing *Raftery v. Mercury Fin. Co.,* 1997 WL 529553, at *2 (N.D.Ill. Aug. 15, 1997)).

The Group also put forward a problematic dispute resolution mechanism whereby disagreements are resolved "by a majority vote, in which each [member of the Group] possesses a number of votes equal to [their] losses incurred in connection with [their] Class Period purchases of HMLP securities, calculated in U.S. dollars." Dkt. No. 19-8 at 5 ¶10. This means Huang, with the larger loss, would *always* have decision-making power, rendering the grouping and purported "joint decision making" entirely hollow—and further demonstrates that the Group was merely formed by counsel to create the largest aggregate losses *In re LightInTheBox Holding Co., Ltd. Sec. Litig*., 2013 WL 6145114, at *2 (S.D.N.Y. Nov. 21, 2013) (rejecting a lead plaintiff movant group with a similar dispute resolution system).Finally, the Court should not permit the members of the Group to be considered individually as the Group did not request that any of its constituents be

appointed as lead plaintiff individually in the event the Court did not appoint the Group. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See Takata*, 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts."); *Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at *5 (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.,* 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008)  (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such"); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed

7

as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis).

The Group's motion should be denied as it has failed to demonstrate it is entitled to the Lead Plaintiff presumption. The movant that has the largest financial interest must "make a *prima facie* showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). As discussed above, neither the Group nor Mr. Gonzalez meet the requirements of Rule 23. The PSLRA then requires the Court to consider the movant with the next-largest financial interest and undertake the same statutory inquiry with respect to that movant's adequacy and typicality. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008) ("If [the movant alleging the greatest financial interest] does not satisfy the criteria of Rule 23, the Court must repeat the Rule 23 inquiry, this time considering the plaintiff with the next-largest financial stake. The Court so proceeds until it finds a plaintiff who is willing to serve and is able to satisfy the requirements of Rule 23."); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

The Court then should turn its attention to the movant with the second highest claimed losses, Mr. Gonzalez.

8

### 2.    Mr. Gonzalez is Atypical as a High Frequency Trader

Mr. Gonzalez has failed to make the requisite showing of adequacy and typicality. Mr. Gonzalez engaged in high frequency high frequency trading for Partnership securities.  A review of the approximately 21 pages of trades reveals that he engaged in large numbers of transactions on certain days with highly unusual patterns. Dkt. No. 17-6. For example, on both April 30, 2021 and May 4, 2021, he purchased a total of 19,993 shares and sold a total of 30,000 shares (through dozens of separate transactions). *Id.* On these days, he accounted for 17% and 13% of the daily volume of shares traded, respectively. Mr. Gonzalez's extreme high frequency trading renders him atypical and subject to unique defenses which would become a focus of the litigation.

Courts refuse to appoint high frequency traders, like Mr. Gonzalez, as they are subject to unique reliance defenses. *In re Opnext, Inc. Sec. Litig.,* 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged losses"); *Tsirekidze,* 2008 WL 942273, at *4 (finding high frequency trader atypical because such trading "belies any true reliance on company reports or even on the integrity of the stock price itself"); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *1 (N.D. Cal. Aug. 22, 2008) (finding a high

9

frequency trader atypical from the class "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility").

Mr. Gonzalez' extreme trading volume is in addition to his both purchasing and selling the Partnership's common units on nearby days and even on the same day at multiple times during the Class Period, such as April 30, 2021, May 4, 2021, and May 6, 2021. Dkt. No. 17-6.

Thus, his trading patterns subject Mr. Gonzalez to unique defenses which will distract from the Class's claims, and therefore, he cannot satisfy adequacy and typicality and cannot serve as Lead Plaintiff. *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative.").

In summary, Mr. Gonzalez has failed to make an initial showing of typicality, and therefore, has not triggered the most adequate plaintiff presumption, and should be rejected.

### B.    PRINCIPIA SHOULD BE APPOINTED LEAD PLAINTIFF

In contrast to the Group and Mr. Gonzalez, Principia is the lead plaintiff movant with the greatest losses *and* which meets the requirements of Rule 23. As set forth herein and in its opening memorandum, (Dkt. No. 16-2), Principia is not subject to unique defenses and satisfies the requirements of being a lead plaintiff.

10

Principia lost approximately $110,221 in connection with its Partnership transactions. Moreover, Principia did not engage in any extreme trading patterns that would distract from the litigation and subject itself (or the Class) to unique defenses. Principia also refrained from moving as part of a clearly inadequate group.

Additionally, Principia is the only Lead Plaintiff movant that purchased both the HMLP and HMLP-PA. Thus, Principia is uniquely position to represent securities in this case. *See Pino v. Cardone Cap., LLC*, 2020 WL 7585839, at *3 (C.D. Cal. Dec. 18, 2020) ("[Principia] has no incentive to favor [any] subset of investors—his interests are completely aligned with the entire class. Because [Principia] does not face a conflict in this regard, he will 'prosecute this action vigorously on behalf of' *all* class members, not just a subset of the class.") (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

To overcome the strong presumption entitling Principia to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists nor has been proffered that Principia is inadequate to be the Lead Plaintiff. As Principia has made a *prima facie* demonstration of its typicality and adequacy, has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Principia should be appointed Lead Plaintiff and its selection of Lead Counsel should be approved.

11

## C.   PRINCIPIA'S   CHOICE   OF   COUNSEL   SHOULD   BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. See 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also S.A.C. Capital Advisors, L.P*, 311 F.R.D. at 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese*, 589 F. Supp. 2d at 398); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.")).

Here, Principia has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class. As its resume reflects, and as courts in this District have previously concluded, Rosen Law is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. No. 16-7; *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at \*21 (D.N.J. Nov. 10, 2016) (finding that Rosen Law "is highly experienced in the complex field of securities fraud class action.").

12

Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. Dkt. No. 16-7. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen Law as the Number 3 securities class action firm both in terms of amount recovered for investors - $438,340,000 – and the number of settlements – 12.[1]  Founding partner, Laurence Rosen was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[2]  Thus, the Court may be assured that by approving Principia's selection of counsel, the members of the class will receive excellent legal representation.

**D.    COMPETING MOTIONS SHOULD BE DENIED**

The competing motions should be denied as Principia satisfies the requirements of Rule 23, has the greatest remaining financial interest in the litigation, and should therefore be appointed Lead Plaintiff without further analyses. *Cendant Corp.*, 264 F.3d at 262.

After the inadequate and atypical movants, the remaining competing movants hold smaller financial interests than Principia. Mr. Anderson has an approximate

---

[1] https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.

[2] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

loss of $69,781.15, Dkt. No. 15-5, and the Höegh Investor Group has an approximate loss of $78,103.16. Dkt. No. 14-4.

In no way is Principia conceding or acknowledging that the competing movants are adequate or that their claims are typical. Principia reserves the right to address the competing movant's adequacy or typicality, should the Court reach those motions.

## III.   CONCLUSION

For the foregoing reasons, Principia's motion should be granted in its entirety and the competing motions should be denied.

Dated: January 24, 2022                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence M. Rosen</u>